IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRLENA J.F.,<br><br>Petitioner,<br><br>vs.<br><br>CHRISTOPHER CHESTNUT, WARDEN OF THE CALIFORNIA CITY DETENTION CENTER, *et al*,<br><br>Respondents. | Civil No. 1:26-cv-05341-MWJS<br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>A# 097-350-682 |

## INTRODUCTION

Petitioner Mirlena J.F.[1] is detained at the California City Detention Facility ("CCDF") pending the resolution of her removal proceedings. She is also five months pregnant. Represented by counsel, she seeks a writ of habeas corpus under 28 U.S.C. § 2241 and a temporary restraining order, contending that her continued detention violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act, and that it contravenes a Immigration and Customs Enforcement (ICE) directive generally prohibiting the detention of pregnant noncitizens. Dkt. Nos. 1, 2.

---

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of her last name are used in this order.

She asks the court to order her immediate release and to enjoin Respondents from re-detaining her unless and until the government establishes, before a neutral decisionmaker and by clear and convincing evidence, that she is a danger or a flight risk. *Id.* at pg. 23.

Respondents oppose relief. They argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) on account of her criminal convictions, and that she has not exhausted administrative procedures through which she could have contested whether her convictions make her detention mandatory. Dkt. No. 6.

For the reasons that follow, the court concludes that exhaustion does not bar review and that Respondents have not established that Petitioner is subject to mandatory detention under § 1226(c). Because Respondents have not otherwise addressed Petitioner's claim under ICE Directive 11032.4, the court GRANTS the petition.

## BACKGROUND

Petitioner is a native and citizen of El Salvador. Dkt. No. 6, Exh. A. She entered the United States in or around April 1989 and was granted lawful permanent resident status on June 23, 2004. Dkt. No. 1, at pgs. 7-8; Dkt. No. 6, Exh. A. She is married to a United States citizen and has five children who are United States citizens, and she is currently pregnant with her sixth child. Dkt. No. 1, at pgs. 7-8.

Between 2009 and 2024, Petitioner sustained a series of criminal convictions in Nevada. As reflected in the record, those convictions include driving under the influence (2009); petit larceny (2010, 2012, and 2013); reckless driving (2012); unlawful use or possession of drug paraphernalia (2013); soliciting or engaging in prostitution (2013 and 2014); contempt of court (2013); trespass (2013 and 2021); drug possession (2015 and 2024); and conspiracy to commit a crime (2019). Dkt. No. 6, at pgs. 1-2, Exh. A; *see also* Dkt. No. 1, at pgs. 8-9.

In February 2019, following her arrest on state charges, immigration authorities encountered Petitioner in local custody. Dkt. No. 6, Exh. A. And on March 19, 2019, ICE served her with a Notice to Appear charging her with deportability under 8 U.S.C. § 1227(a)(2)(A)(ii). Dkt. No. 1-4; Dkt. No. 6, Exh. A. But that same day, ICE released her from custody on her own recognizance, and she remained at liberty during her removal proceedings for the next several years. Dkt. No. 1, at pg. 8; Dkt. No. 6, Exh. A.

On March 2, 2026, Petitioner was arrested in Las Vegas for drug possession and possession of credit cards belonging to others; the petition represents (and Respondents do not dispute) that no conviction resulted from that arrest. Dkt. No. 1, at pg. 9; Dkt. No. 6, Exh. A. The following day, March 3, 2026, ICE took Petitioner into immigration custody, and on April 7, 2026, she was transferred to CCDF, where she remains. Dkt. No. 1, at pgs. 9-10.

Petitioner is approximately five months pregnant, and her pregnancy is high risk: she has one functioning lung following complications from Covid-19 and sepsis in 2020, suffers from bipolar disorder, and has had five prior deliveries by Caesarean section. Dkt. No. 1, at pgs. 2, 9. She alleges that she has received inadequate obstetric care in detention, and that she was restrained by her hands and feet during her transfer to CCDF, in violation of ICE Directive 11032.4, which by its terms prohibits the detention and restraint of pregnant individuals. *Id.* at pgs. 10, 13-14.

After Petitioner initiated this action, the court directed Respondents to answer several questions in writing—among them, whether Petitioner is subject to a final order of removal, and whether Respondents take the position that Petitioner is subject to mandatory detention under any provision of the Immigration and Nationality Act other than 8 U.S.C. § 1225(b)(2). Dkt. No. 5. In response, Respondents contend that Petitioner's removal proceedings remain ongoing: she is not subject to a final order of removal, and her next master calendar hearing before the immigration court was scheduled for July 17, 2026. Dkt. No. 6, at pg. 2. But Respondents contend that Petitioner's continued detention is mandatory under 8 U.S.C. § 1226(c). They also note that there is no indication in the record that Petitioner has asked the immigration court for a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)—commonly called a *Joseph* hearing—at which she could contest whether her convictions make her detention mandatory. *Id.* at pg. 5.

## DISCUSSION

Respondents' § 1226(c) argument is founded on two categories of predicate offenses. Respondents further argue that Petitioner may not challenge the applicability of § 1226(c) in this proceeding because she has not first sought a *Joseph* hearing before the immigration court. The court begins with that threshold exhaustion argument before addressing whether Respondents have established that § 1226(c) applies.

### A. Exhaustion

Before reaching the merits of a habeas petition challenging immigration detention, a district court ordinarily considers whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). That requirement is prudential rather than jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court therefore may excuse exhaustion where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

Respondents argue that Petitioner has failed to exhaust her administrative remedies because she has not requested a *Joseph* hearing. At such a hearing, a detainee "may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [government] is otherwise substantially

unlikely to establish that he is in fact subject to mandatory detention." *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003)). And as a general rule,when a petitioner "contends that [their] classification under [§ 1226(c)] is incorrect, a challenge of that nature must be raised, at least in the first instance, with immigration authorities rather than with a court." *Rakeshkumar H.P. v. Warden, California City Corr. Ctr.*, No. 1:26-cv-02869-MWJS, 2026 WL 1146201, at *1 (E.D. Cal. Apr. 28, 2026).

But that general rule assumes there is an agency classification to challenge. As this court has explained, "it makes little sense to require a petitioner to exhaust administrative remedies to challenge a classification under § 1226(c) when immigration authorities have not classified the petitioner that way." *Julio Cesar M.J. v. Chestnut*, No. 1:26-cv-04775-MWJS, 2026 WL 2139762, at *4 (E.D. Cal. July 24, 2026). That is the situation presented by this record. DHS charged Petitioner in March 2019 with deportability under 8 U.S.C. § 1227(a)(2)(A)(ii). Dkt. No. 1-4; Dkt. No. 6, Exh. E. Nothing in the record reflects that DHS classified Petitioner as subject to mandatory detention under § 1226(c) at that time. To the contrary, on the same day DHS served the charging document, ICE released Petitioner on her own recognizance—a decision difficult to reconcile with a determination that her detention was then statutorily required. Dkt. No. 1, at pg. 8; Dkt. No. 6, Exh. A.

Nor does the record reflect that ICE advised Petitioner, when it re-detained her on March 3, 2026, that it had newly determined she was subject to mandatory detention under § 1226(c). To be sure, there had been an intervening event: the records submitted by Respondents reflect an October 2024 drug conviction, and Respondents now rely on that conviction as one basis for mandatory detention. Dkt. No. 6, at pg. 3, Exh. A. But so far as the record before the court reveals, § 1226(c) itself appeared as a justification for Petitioner's present detention for the first time in Respondents' opposition to this petition. Petitioner cannot be faulted for filing her petition before requesting a *Joseph* hearing, given that Respondents never alleged she fell within § 1226(c) before her petition was filed.

In any event, a *Joseph* hearing would not resolve the full claim presented here. Such a hearing addresses whether a detainee falls within § 1226(c); it does not provide a remedy for Petitioner's separate claim that ICE failed to comply with Directive 11032.4, which is discussed in further detail below. A *Joseph* hearing therefore would not resolve all of the issues presented by Petitioner's continued detention, even as it would cause substantial delay in the resolution of those issues. That kind of delay is an appropriate basis for excusing a failure to exhaust. *See Hernandez*, 872 F.3d at 988; *Laing*, 370 F.3d at 1000. And delay has particular consequences in this case because Petitioner has a high-risk pregnancy and one functioning lung. Dkt. No. 1, at pgs. 2, 9. Requiring her to complete an administrative process before obtaining judicial review of her present

detention risks precisely the sort of irreparable injury for which exhaustion may be excused. *See Laing*, 370 F.3d at 1000.

The court therefore excuses exhaustion and turns to the merits.

### B. Respondents Bear the Burden of Establishing That § 1226(c) Applies

Relying on *Nguyen v. Sessions*, 901 F.3d 1093 (9th Cir. 2018), *abrogated on other grounds by Barton v. Barr*, 590 U.S. 222 (2020), Respondents argue that Petitioner is an "applicant for admission" who bears the burden of proving that she is not inadmissible under 8 U.S.C. § 1182(a)(2). From that premise, they contend that Petitioner likewise bears the burden of proving that she is not subject to mandatory detention under § 1226(c) . Dkt. No. 6, at pgs. 3-4.

*Nguyen* does not support that result here. It explains that an "applicant for admission" bears the burden of proving that she is not inadmissible under § 1182, while the government bears the burden of proving removability when a noncitizen has been lawfully admitted to the United States. 901 F.3d at 1096 (citing 8 U.S.C. § 1229a(c)(2)-(3)). The record places Petitioner in the latter category. Respondents acknowledge that she "was granted lawful permanent resident status in 2004," Dkt. No. 6, at pg. 1, and that DHS charged her by Notice to Appear with "deportability pursuant to 8 USC § 1227(a)(2)(A)(ii)," *id.* at pg. 4.

The statute further confirms that a noncitizen "lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the

United States for purposes of the immigration laws" unless one of six specified exceptions applies. 8 U.S.C. § 1101(a)(13)(C). *Nguyen* recognized that rule in considering a lawful permanent resident charged with deportability under § 1227(a)(2). 901 F.3d at 1096-97. Respondents invoke none of those exceptions, and nothing in the record suggests that any would apply. They therefore have not established the premise necessary to place on Petitioner the burden applicable to an applicant for admission.

It follows that Respondents bear the burden of establishing the predicates on which they rely for mandatory detention. And when that determination depends on whether a state conviction corresponds to a qualifying federal offense, the government bears the consequences of an inconclusive showing. *See Tokatly v. Ashcroft*, 371 F.3d 613, 620-21 (9th Cir. 2004); *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163-64 (9th Cir. 2006); *Notash v. Gonzales*, 427 F.3d 693, 700 (9th Cir. 2005); *see also Suazo Perez v. Mukasey*, 512 F.3d 1222, 1227 (9th Cir. 2008); *Julio Cesar M.J.*, 2026 WL 2139762, at *5.

### C. Respondents Have Not Carried Their Burden

Section 1226(c) requires the Attorney General to take into custody certain noncitizens who fall within enumerated categories of criminal offenses. 8 U.S.C. § 1226(c)(1). Respondents invoke two such categories. Neither has been established on this record.

#### 1. The Drug Convictions

Respondents first invoke § 1226(c)(1)(A), asserting that Petitioner's 2013, 2015, and 2024 drug convictions render her inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Dkt. No. 6, at pg. 3.[2] Their analysis consists of a single sentence: "[w]hile the convictions fall under state violations, a controlled substance is codified under the Controlled Substances Act (Title 21)—a federal offense." *Id.* That inquiry is insufficient under the categorical approach.

Section 1182(a)(2)(A)(i)(II) applies to a conviction for violating a state law "relating to a controlled substance (as defined in section 802 of title 21)." That federal definition is relevant here because a state drug conviction triggers the federal immigration consequence only when the offense of conviction is tied to a substance controlled under federal law. *See Mellouli v. Lynch*, 575 U.S. 798, 812 (2015). Courts therefore compare the elements of the state offense with the relevant federal definition. If the state statute criminalizes conduct that the federal provision does not, it is categorically overbroad. *Villavicencio v. Sessions*, 904 F.3d 658, 664 (9th Cir. 2018). Only if an overbroad statute is divisible—that is, if it sets out alternative elements rather than alternative means—may a court consult the record of conviction under the modified

---

[2] Petitioner alleges that her present detention "does not stem from any new criminal convictions," Dkt. No. 1, at pg. 2, and notes that her March 2026 arrest did not result in a conviction, *id.* at pg. 9. The immigration records submitted by Respondents, however, reflect an October 29, 2024, drug conviction, and Respondents rely on that conviction as one basis for mandatory detention. Dkt. No. 6, at pg. 3, Exh. A. The court therefore considers that conviction on the record Respondents have presented.

categorical approach. *Id.* at 664-65; *Descamps v. United States*, 570 U.S. 254, 257-58 (2013). As the Ninth Circuit has recognized, an overbroad and indivisible statute cannot supply the predicate.

Respondents have not identified the Nevada statute underlying any of the three drug convictions on which they rely. Nor have they submitted a judgment of conviction for the 2024 offense, the only drug conviction that postdates Petitioner's 2019 release. The record identifies that conviction only through a line in a Form I-213 prepared by a deportation officer, which describes the offense as possession of a drug not for interstate commerce. Dkt. No. 6, Exh. A.

If that description refers to Nev. Rev. Stat. § 454.351, the Ninth Circuit has already held that the statute is both overbroad relative to the federal Controlled Substances Act and indivisible. *Villavicencio*, 904 F.3d at 665-67. Because the alternatives identified by the statute are means rather than elements, the modified categorical approach is unavailable. *Id.* The conviction therefore could not provide the necessary controlled-substance predicate. Although *Villavicencio* arose under the deportability provision in § 1227(a)(2)(B)(i), both provisions incorporate the same federal limitation—a controlled substance "as defined in section 802 of title 21"—and the same mismatch is relevant here.

If Respondents instead mean to rely on a different Nevada provision, they have not identified it, addressed its elements, or undertaken the overbreadth and divisibility

analysis the categorical approach requires. Because Respondents bear the burden, that omission is dispositive on the present record. As this court has explained, when "Respondents have offered no information about the nature or circumstances of Petitioner's conviction aside from the generalized fact of the conviction itself," the court "cannot conclude" that the offense qualifies "under either the categorical or modified categorical approach." *Julio Cesar M.J.*, 2026 WL 2139762, at *4. The same deficiency applies to the 2013 and 2015 convictions, which Respondents describe only as "unlawful use/possession of drug paraphernalia" and "drug possession." Dkt. No. 6, at pgs. 1-2.

**2. The Crimes Involving Moral Turpitude**

Respondents next rely on § 1226(c)(1)(B), which applies to a noncitizen "who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii)," among other provisions. Section 1227(a)(2)(A)(ii), in turn, requires convictions for two or more crimes involving moral turpitude "not arising out of a single scheme of criminal misconduct." Respondents identify three petit larceny convictions, from 2010, 2012, and 2013, and two prostitution convictions, from 2013 and 2014. Dkt. No. 6, at pg. 4.

Respondents again do not identify the statute or ordinance underlying any of the convictions on which they rely. As to the theft convictions, they cite *Lopez v. Garland*, 116 F.4th 1032 (9th Cir. 2024), for the proposition that a petty theft conviction is a crime involving moral turpitude. But *Lopez* construed a provision of the Reno Municipal

Code, while the records Respondents have submitted reflect convictions in the Las Vegas Justice Court and Henderson Municipal Court. Dkt. No. 6, Exh. B. Respondents do not identify the provisions applied by those courts or compare their elements with the generic offense.

There is an additional problem with Respondents' reliance on *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016). Petitioner's theft convictions date from 2010, 2012, and 2013. At the time of those convictions, the governing rule was that "a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to permanently deprive an owner of property." *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1294 (9th Cir. 2018) (cleaned up). *Diaz-Lizarraga* changed that rule in 2016 to encompass certain takings that substantially erode the owner's property rights even without an intent to deprive permanently. 26 I. & N. Dec. at 853-55. But the Ninth Circuit has declined to apply that expanded definition retroactively to theft convictions entered under the earlier rule. *Garcia-Martinez*, 886 F.3d at 1294-96; *see also Barbosa v. Barr*, 926 F.3d 1053, 1058 (9th Cir. 2019). Thus, to establish that Petitioner's pre-2016 theft convictions are crimes involving moral turpitude, Respondents would at minimum need to show that the offenses of conviction required an intent to

permanently deprive the owner of property. Having failed even to identify those offenses, they have not done so.[3]

The prostitution convictions suffer from the same threshold problem. Respondents rely on *Rohit v. Holder*, 670 F.3d 1085, 1089 (9th Cir. 2012), which held that California Penal Code § 647(b) categorically constitutes a crime involving moral turpitude. They then assert that "[t]he Nevada prostitution statute is likewise a CIMT under the categorical approach because its statute defines 'solicit' or 'engage in prostitution' similar to California's § 647(b)." Dkt. No. 6, at pg. 4. But Respondents do not identify the Nevada statute, quote its elements, or otherwise substantiate the asserted similarity. A conclusion that two offenses are similar cannot substitute for the required comparison of their elements. The exhibits do not cure these deficiencies. Several entries on which Respondents appear to rely are reflected in the attached records as dismissed or denied. *See* Dkt. No. 6, Exhs. B, C. And the 2019 and 2021 convictions mentioned in Respondents' background section appear to be drawn solely from the narrative in the Form I-213. Dkt. No. 6, at pg. 2, Exh. A.

The court does not conclude that Petitioner's convictions could not possibly qualify as a predicate for mandatory detention. Instead, the court concludes that

---

[3] Respondents cite *Silva v. Barr*, 965 F.3d 724 (9th Cir. 2020), in support of their argument. Dkt. No. 6, at pg. 4. That opinion was withdrawn and may not be cited to courts within this Circuit. *See Silva v. Garland*, 993 F.3d 705, 717 (9th Cir. 2021). In any event, Respondents' reliance on the post-2016 definition of a theft crime involving moral turpitude does not account for the dates of Petitioner's convictions.

Respondents have not established that any do on the record they provided and arguments they made based on that record. That is to say, "the record ambiguities—which Respondents have chosen not to fill in—cut against the government." *Julio Cesar M.J.*, 2026 WL 2139762, at *5.

Respondents have not established that § 1226(c) requires Petitioner's detention.

**D. ICE Directive 11032.4**

Having concluded that Respondents have not carried their burden of establishing that § 1226(c) requires Petitioner's detention, the court turns to the relief appropriate here.

Ordinarily, a noncitizen whose detention is not mandatory is entitled to a statutory bond hearing; after that hearing, detention would be permissible if the hearing revealed a risk of flight or danger to the community. But Petitioner argues that her continued detention violates ICE Directive 11032.4, *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals* (July 1, 2021), and that she is entitled to relief under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Dkt. No. 1, at pgs. 13-14.

The Directive provides that "[g]enerally, ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist." It further requires approval of such detention by the

Field Office Director, or a designee no lower than the Assistant Field Office Director, and regular reevaluation of whether continued detention remains appropriate.

Respondents do not address this claim. They do not dispute that Petitioner is pregnant, contend that the Directive does not apply, or identify any exceptional circumstances warranting her detention. Indeed, their opposition does not address Petitioner's pregnancy at all. *See generally* Dkt. No. 6. Courts generally treat an argument left unanswered as forfeited. *See Morales Lopez v. Maples*, No. 4:26-cv-00113-SEB-KMB, 2026 WL 1433970, at *5 (S.D. Ind. May 21, 2026) (concluding that respondents had violated Directive 11032.4 under *Accardi* when they failed to respond to the petitioner's argument that the Directive required her release).

The Directive recognizes one exception potentially relevant here: ICE may detain a pregnant individual when "release is prohibited by law." That could have been the case if § 1226(c) applied. *See, e.g.*, *Morales Sumano v. Chestnut*, No. 1:26-cv-04954-KES-CDB, 2026 WL 2177112, at *3 n.3 (E.D. Cal. July 28, 2026) (holding that because the petitioner was "statutorily subject to detention pursuant to § 1226(c)(1)(E), she ha[d] not established that ICE violated Directive 11032.4 in detaining her"). But, for the reasons explained above, Respondents have not shown that § 1226(c) or any other statute requires Petitioner's detention. The exception therefore does not apply. *See Banegas Santos v. Bondi*, No. 26-cv-63-WMC, 2026 WL 473162, at *2 (W.D. Wis. Feb. 19, 2026) (finding an *Accardi* violation when respondents identified "no exceptional

circumstance or other legal reason why [the petitioner's] release is impermissible under ICE Directive 11032.4"); *de Leon Lopez v. Ladwig*, No. 6:25-cv-01884, 2026 WL 19095, at *8 (W.D. La. Jan. 2, 2026).

Given that Respondents have identified neither an exceptional circumstance warranting Petitioner's detention nor a law prohibiting her release, Petitioner's continued detention is inconsistent with Directive 11032.4 and she is entitled to relief under *Accardi*.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED. Because it is unnecessary to resolve the other claims in the petition, the court declines to do so. Given the foregoing, Petitioner's motion for a temporary restraining order, Dkt. No. 2, is DENIED AS MOOT.

Respondents are ORDERED to immediately release Petitioner Mirlena J.F. (A# 097-350-682) from their custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the government shall bear the burden of

establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present. This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

The Clerk of Court is DIRECTED to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

DATED: August 8, 2026, at Honolulu, Hawaiʻi.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge